That's 25,707. Thank you so much. Councilor Beck and Stencox, you have divided your time into 6 and 2, is that correct? That's correct, Your Honor. Okay, but you're going to be the only one coming back, is that correct? Yes, Your Honor. When you are ready, you're welcome to proceed. Good afternoon, Your Honors, and may it please the Court. Lauren Beck for the appellant, Mr. Sean Raymond. I'll be addressing the district court's summary judgment ruling, dismissing Mr. Raymond's failure to accommodate claim, and my colleague will be addressing the weight of the evidence issues. On the summary judgment ruling, the district court twice applied an incorrect legal standard, and it repeatedly failed to construe the evidence in the light most favorable to Mr. Raymond as required on summary judgment. And it did that in both parts of its ruling. First, the district court found that, quote, NBF repeatedly accommodated plaintiff's perceived disability. And in doing so, the district court specifically pointed— That's one of the things that I found candidly a bit confusing about your briefs. I'm not sure how—are you making a failure to engage in the interactive process argument, or is it just factual color? I do think that NBF failed to engage in the interactive— What did you argue? What is in front of us? I do not believe that's in front of you, because it was not considered by the district court. So then at every point in time, we are supposed to examine whether the—I guess the second accommodation of taking over, taking out the last four, was the repeated offer every time he requested an accommodation. Is that correct? Is that the way to think about it? I don't think that's the way to think about it, Your Honor. I think that's certainly how the district court thought about it, and that's part of the error here. He made four requests. The first one is not in dispute. He made a second request in 2017. NBF refused that request but made the alternative accommodation of removing the FER for the stops from Area I. When that didn't work, Mr. Raymond made a third request in 2018. NBF denied that request in part on the basis that we already provided you an accommodation in 2017. But I'm just— Yes, Your Honor. That's the only accommodation they ever actually provided is the four. That's correct, Your Honor. I mean, aside from the first accommodation, which was a request for light duty for four weeks, that was granted. Is it your position that that accommodation was ineffective because he then got sick again, got worse, and then made the final request to, I think, go to Area J, and that was denied? Yes, Your Honor. That is our argument. I think that the record evidence, if it was construed in the light most favorable to Mr. Raymond, would have allowed a reasonable juror to conclude that removing the FER for the stops in Area I was grossly ineffective. And we see that in the record in multiple places that Mr. Raymond attempted to service Area I for approximately six months without visiting the four for the stops as NBF had offered, and then he suffered permanent nerve damage and was re-hospitalized. And that evidence was specifically pointed to in Plaintiff's Motion for Summary Judgment Briefing at page 10, including at the record at A724, A728, and A730, most critically, I think, a July 2018 doctor's note that was provided to NBF that said the patient had stated the symptoms worsened over the past seven months, and he now had permanent nerve damage. That evidence was certainly enough to allow a reasonable juror to conclude the issue in Mr. Raymond's favor and certainly enough for a reasonable juror to conclude that NBF's later decisions to refuse Mr. Raymond's third and fourth requests, in part on the basis that it had already provided an ineffective accommodation in 2017, was not a reasonable decision. Okay. I mean, at bottom, is the argument that the district court didn't credit, as should have happened during, at this particular proceeding, the deposition testimony about Area J requiring less continuous, or requiring less continuous driving? That's part of the argument, Your Honor. And I apologize if I'm being unclear about what I see as the two parts of the district court's opinion. The first is NBF provided a reasonable accommodation. We believe the wrong legal standard was applied, and the evidence of ineffectiveness was not properly construed. And then there's the second part, where the district court rules that Mr. Raymond, and I think the – Was that accommodation was reasonable? Yeah. And I think the language that the district court used in that respect is critical, because the district court said that Mr. Raymond had not identified a reasonable accommodation that was necessary to enable plaintiff to perform. Right. I mean, but do you need to win that we think necessary is determinative? No. Your Honor. Okay. In order to prevail on that particular point, do we have to take your argument about the distinction between positions and assignments as true? Or can you win even if we don't see the world the way you do? That's an interesting question, Your Honor. I believe that, at the very least, it's a genuinely disputed fact that wasn't resolved on the summary. Is that really? Because, I mean, don't we have case law that say that you can't be asked to create a new position or fire somebody from a new position? Is that – I mean, would you concede that law to be true? Absolutely, Your Honor. That law exists and serves an important purpose. It's absolutely inapplicable. So it sounds like you are saying you do need to win the fact that this is a difference between a position and an assignment. If the panel is interpreting that as an issue before the court, then absolutely, yes. I'm sorry. I didn't understand what you just said. My understanding, Your Honor, was that the district court did not rule as to whether Mr. Raymond was requesting a vacant position. But it's absolutely an issue that's been raised in the briefing. Okay. What I am also interested in is whether or not both of the claims have to rise and fall together. Do we have to – can we rule in your favor on the failure to accommodate case, but against you on the discrimination claim? Yes, Your Honor, absolutely. And because why? Because they're at distinct procedural stages. And it's fundamentally unfair to take the evidence that was produced in trial, where the district court judge specifically told us that we could not bring in evidence relevant to the failure to accommodate claim, although that was impossible to do. Some still came in. Honestly, that's funny. I thought what you were going to say was that the verdict form didn't break the claim down into elements, so we couldn't know what exactly the jury found. That is the second part of the problem, Your Honor, yes. And an appellee notes in their briefing, you know, on various elements that the jury found X, Y, and Z. But the truth is we have no idea what the jury found because the verdict form was a single question. So they could have found he was not disabled. They could have found he was not otherwise qualified. We don't know. So it would certainly not be redoing the same proceeding to allow the failure to accommodate claim to proceed to trial. I believe it should be reversed, Your Honor. I believe there are multiple errors of law and that this Court can review the record de novo. But you just said in the beginning that a reasonable juror could have reached a different conclusion. Why is that not a remand for a trial as opposed to entering judgment in your favor? Oh, I apologize, Your Honor. I think I misunderstood the question. Yes, absolutely. And, Counselor, are you arguing that on the summary judgment that the district court was incorrect when it said has not provided any evidence such as a map or a list of Area J's facilities, driving times, et cetera, et cetera, and yet ignored the testimony of the plaintiff that Area J would have been less driving? Yes, Your Honor. Because as we know from this Court's decisions in Rentas and Bellamy and many others, a plaintiff's testimony is sufficient to raise a dispute of genuine fact on summary judgment. The district court was not entitled to reject that testimony or require corroborating evidence. And I'll just make the point that there was no one in a better position to testify based on firsthand experience what it was like to drive in both of these areas based on 20 years driving in the tri-state area and having worked in both and how it would affect his disability than Mr. Raymond was. So this is not a situation where it was a mere scintilla of evidence that shouldn't have been credited. I see I'm out of time, so I will step down. Thank you, Your Honors, and may it please the Court. Okay, go ahead. For at least three reasons, the district court abused its discretion in denying Mr. Raymond's motion for a new trial on the grounds that the jury verdict was against the weight of the evidence. Is there an issue about whether that's appealable to us or not? There is certainly an open question. You know, as this Court recognized in Ortiz v. Stombach, there is some ambiguity in the case law in the Second Circuit as to whether it's reviewable. Also in Macayo v. UPS, which Judge Perez was on that panel, they recognized that there was ambiguity in the precedent and decided not to resolve that ambiguity. I think that there's two reasons that this Court should decide to resolve that ambiguity. The first is that, as we cited in our brief at page 40, it appears that every sister circuit has— Wait a minute. Did you just ask for us to go on bonk? I'm sorry? Did you just ask for us to go on bonk by resolving the ambiguity? And the answer is perhaps you have, and it's not that scary. Perhaps I have. But I think that it's possible that this Court should decide, you know, to resolve that ambiguity in favor of reviewability. We have remarkable ways around saying that and saying something else and getting the same result. The first being, obviously, the weight of the sister circuits in saying that it's reviewable. And then, you know, we would submit as a matter of public policy that these decisions which may result in legal error should not be insulated from review. For example— Legal error, not factual error. Exactly, Your Honor. For example, the Seventh Circuit has explained that the standards applied to a motion for judgment as a matter of law differ so significantly that a motion for a new trial may be granted even if a motion for judgment as a matter of law may be denied. And that's Mejia v. Cook County. And in that court, the Seventh Circuit found that the district court applied the incorrect standard to the denial of a motion for a new trial such that it amounted to an abuse of discretion and remand was appropriate even if the motion for a new trial should not have been granted on the merits of the weight of the evidence argument. So I'm interested—I mean, we get a lot of people who are frustrated when they don't prevail below on these kinds of motions, but we also have a strong tradition of respecting a jury's conclusion. Why could not the jury have decided that evidence like the long flight was a suggestion that he should have been able to do this? Why is that not enough? I mean, I guess what I'm asking is more broadly, what about your argument isn't asking us to just re-weight the evidence? Sure, Your Honor. I mean, I think two things. I think, first and foremost, we think that there were legal errors in the district court's opinion denying the motion for a new trial that should not go unresolved. But as a second matter, we think that the weight of the evidence, you know, does weigh in our favor and it does show that allowing this verdict to stand would be a manifest injustice. I think that taking in a vacuum the— So we've got the long flight. We've got the job posting that was required about prolonged driving. We've got the returning without restrictions testimony and the letter. Why isn't that enough for the jury to have decided that he wasn't discriminated against when he was fired? It was just because he couldn't do the job anymore. Well, we think that— He didn't do the job anymore. I could take each of those in turns. But I think that the bottom line is that Mr. Raymond proved that he was able to do the essential functions of the job with reasonable accommodations, having done so successfully for many years before he was— Well, I mean, that's an admirable fact on the other side of what we're trying— I mean, that's an admirable fact, a useful fact for you. The question is, is that why would it have been improper for a jury to look at the flight, the job description, what his doctor said and say that he actually just was fired because he couldn't do the job anymore or wouldn't do the job anymore? Sure, Your Honor. I think that taking each of those in turn, when it comes to the flight, we dispute that the flight showed that he—that that ran contrary— No, I completely get that you have the argument. You have arguments to make. I completely understand that you can poke holes. I can understand why you can take one on an individual level. What I need to hear from you, based on what the legal standard is, is why could not a jury have reached the conclusion that it did from these things? What makes it impossible or unreasonable for them to have reached this conclusion, even though you might have reached a different conclusion, even if I might have reached a different conclusion? Sure, Your Honor. I think that what it actually boils down to then is that Mr. Raymond was hospitalized after serving Area I, right? The revised Area I with the four farthest locations removed from that area. He was hospitalized as a result of having to drive those distances without being able to take a break because that required him driving on the Long Island Expressway. It was not easy for him to pull over, and he suffered a pulmonary embolism, and it resulted in permanent damage to his, you know, venous system. When he returned to work and he asked for an accommodation, he asked for further accommodation, including perhaps being reassigned to his previous assignment, which did not require that driving without allowing him to take breaks, NBF said, you can only return to work if you can do so without restrictions. And this is the phrase that they used over and over, including when they terminated him. They said, you are terminated until you can return to work, essentially, without. So I'm going to ask you to focus on what made it impossible for the jury to conclude, and it's not actually an impossible stand, what made it improper for the jury to conclude that he was not fired because he was discriminated against? For whatever reason, we don't actually know why. It might have been because they thought he wasn't disabled, and the evidence of the flight was that. It might have been the fact that they thought that it was a bona fide job requirement and he couldn't do it. It might have been the fact that they couldn't accommodate. It wasn't an undue burden to tell them to be able to accommodate the restrictions. Even assuming that we don't know why, why would it have been improper or wrong to credit the jury's conclusion that he wasn't discriminated against? I would return to the fourth element on Mr. Raymond's disability discrimination claim, which is that at the end of the day, NBF refused to consider any further accommodations. And you think that the inference of animus from that is so strong that it makes it— that no reasonable jury could have concluded that he either wasn't discriminated against or the job required it or the restrictions that he needed were too burdensome? Yes, Your Honor. And I would point, Your Honor, to Parker v. Columbia Pictures, in which the court said that failing to consider reasonable accommodations and then terminating, you know, your employee as we argue Mr. Raymond was here for— I think we've got the argument. Okay. Thank you, Your Honor. Thank you, Your Honor. Good afternoon. Rachel Fisher on behalf of the Appley 1199 SEIU National Benefit Fund. Turning first to the district court's decision granting summary judgment to NBF on Mr. Raymond's failure to accommodate claim, Mr. Raymond had the burden of production and persuasion as to the existence of an accommodation that would have permitted him to perform the essential functions of the outreach coordinator role. Right, but he only has to prove that there's a triable fact as to both of those, right? He doesn't have to prove it. He has to—correct. Yes. Yes. Okay, and so why isn't his testimony that he could do job or that he could do assignment J or area J not sufficient to create a triable fact? A couple of reasons. So, first of all, Your Honor, area J, it's important to note, was occupied. A different outreach coordinator was assigned to area J at the time that Mr. Raymond was making a request to return to that area. And to be clear, he had previously been assigned to half of J prior to the restructuring. When NBF underwent the restructuring, it consolidated area J, which was a very large area. It assigned it— But if we—if we are persuaded by their argument that this is not actually a position or a job that you would have to take something from anybody else, but rather an assignment that happens all the time, do you lose? No. Well, first of all, I'm going to answer your question, Your Honor, but the premise of the question is inaccurate because this is not a fluid, you know, transferable job. There's no evidence of that, that this is something that just assignments were coming and going and not something set. So what do you mean we had all the—there was all that deposition testimony of this getting assigned to this paramour and then this other person? I mean, you know, I read a bunch of testimony, deposition testimony, that sounded like it wasn't particularly static. Well, actually, Your Honor, respectfully, I don't think that's what the deposition testimony reflects. What the deposition testimony reflects is that Mr. Sasse, the director of outreach, would assign outreach coordinators based on these demarcated areas, and the areas were demarcated by the union, not by the fund, by the union, which is separate. All right. So let me ask the question, though. Could a jury—is it a jury question as to whether or not it was a position or an assignment? No, Your Honor. It is a question of law as to whether or not—that is the position you're taking today, that it is a question of law as to whether or not it is a position versus an assignment? There's— Okay, if you—I mean, I think you're going to say yes. Is that right? Because you said that it can't—it shouldn't go back to the jury. What is the legal definition that defines something, that makes something different between a position and an assignment, and what is the case that supports that? Sure. There are multiple cases that address the concept that a position must be vacant in order for it to be a potential accommodation for an individual. The question—you're right—if it is, in fact, a position versus an assignment. So what I heard you say is that is not a jury question. It's not a question of fact as to whether, in this particular instance, it was actually a position or it was an assignment. You said, I think, that it shouldn't go back to the jury, which, by definition, means that it's a question of law. So what is the definition that—and where is the case that says this is a question of law? We've cited—and I'm going to—we've cited several cases that address this point. And the cases—there's no case that I'm aware of, and certainly the plaintiff has cited none, that says everybody with the same job title, if you all have the same job title, all these outreach coordinators, or whatever the job title is, whatever you're assigned to is interchangeable. That's essentially what they're arguing. Once you have that title of outreach coordinator, doesn't matter what your assignment is, doesn't matter what your role is, it's all interchangeable. There's no—first of all, there's no evidence— No, what I think they're arguing right now is that that's a question for the jury, right? That whether or not it is actually interchangeable, whether or not it is actually static, or whether or not it's a different position, is a question that we shouldn't have been determined on summary judgment. And there was testimony suggesting that it was actually just an assignment that could have been done just like he got moved from J to I to begin with. Well, Your Honor, that recitation of the record I do not believe is accurate. The portions of the record that they cite for— But who decides that? You or the jury, right? I mean, you might be right. You might be right. The question is, is why isn't it a triable fact? And somebody's going to be right and somebody's going to be wrong. He's claiming that it was—that the positions were not static, but that is Mr. Raymond's— I understand that's what Mr. Raymond says. Right, and sworn at a summary judgment standard, sworn testimony is evidence, right? Of course. So now do we have a disputable fact over whether or not it was a position versus an assignment? I don't believe we do because I don't believe the law makes that distinction as he's trying to make. And he cites not one case that makes that distinction. And we've cited several that I think support our position, that there is no such distinction here. Now, one of those cases is the Thompson case. In that case, there was a teacher, a teacher who was a phys ed teacher, a gym teacher, and the teacher had a disability and was unable to continue in that role. And so the teacher said, okay, I'm also qualified to be a teacher in health studies, and I could give lessons in health. So I can't be a gym teacher right now. Why don't you reassign me to a role as a health instructor because I can do that even with my disability? And the Court found that's not—and there was no vacant position at the time for a teacher in— That's not the case here. The record reflects that all of these outreach coordinators changed positions from time to time. Not so, Your Honor. Well, they actually even got rid of four from his and assigned—four from Area I and assigned it to somebody else. And sometimes they reorganize the areas. The testimony— That case isn't helpful to us. Well, I disagree because what he's claiming is that he should have been reassigned to Area J. And I think that is on point with the idea that if somebody is in that position already doing a different job than what Mr. Raymond was doing, he doesn't have the right to take it. But that's different from switching assignments, if you will, which has been done before in this case. Actually, the record is that it was not done before. The testimony that was cited about changes in assignments, what plaintiff has cited is Mr. Saucy's testimony about how assignments are made in the first instance. If there was a vacancy, he described how assignments were made. He would look at things like geography. But this plaintiff's area was changed in the past. He was in—I think he was in J first, then he went to I, and then he wanted to go back to J. That is correct. Okay. So what am I to make of that? Clearly they switch them around. They switch them around, but the evidence was that that was based on need. Well, that, I think, is a legitimate legal question, but that's a question of burden, right? Like whether or not it would be reasonable for him to have gone to J because maybe he would not have been as good at whoever they assigned to J and they couldn't make a business case for it. That, to me, is at a different—that is a legitimate and legally significant point, but I think it happens later in the process. Why—and you're asking us to decide on a summary judgment standard that there's not even a triable question as to whether or not he could— that there was an accommodation that existed. You're jumping straight to it would have been burdensome for them to do it. And I think their argument, we didn't even get to that point. We didn't even get to show that it wouldn't have been burdensome because we got kicked out on the first instance, which was that there wasn't an accommodation to be made for us. Well, again, I think there's two issues with the request to return to Area J. So one is that it was not vacant. And the second is, which Judge Daniels described in his opinion, there was no evidence that returning to Area J would have accomplished Mr. Raymond's goal of not driving for more than 30 minutes at a time. Except for his testimony. His testimony did not say exactly that. His testimony said there was— He could take more breaks. He knew the places more. He didn't have to ride on the highway. He said, quote, Area J would have been less driving, close quote. Exactly, Your Honor. He said it would have been less driving, and he said Area I was more driving. But that relative comparison is not evidence. That's a relative term for him, less and more. That is not evidence that he would have established that he would have never had to drive for more than 30 minutes in Area J. That's not his point, is it? That's not the test. Not at summary judgment, right? At trial, could he have established it? Is it— But he had the burden at the summary judgment stage to establish a reasonable accommodation. It's a disputed issue of fact. And why was that testimony not credited? Because Judge Daniels found that even if it were true that Area J had less driving for Mr. Raymond and Area I had more driving for Mr. Raymond, the question before the court was, it's not about less or more. The question before the court is, Mr. Raymond has a limitation of 30 minutes that he can be sitting at a time or else, according to him, he's in a state of danger for his health. And nowhere in the record did Mr. Raymond adduce evidence that by switching to Area J, he could have avoided that. That's not the relevant portion of what the district court said. The district court said, quote, Plaintiff has not provided any evidence, such as a map or a list of Area J's facilities with driving distances and times, that demonstrates Area J, as opposed to a modified Area I, could have resolved issues. And I forget what the rest of it is. But in any event, that's what he said. He didn't talk about whether it would have resolved or any of that. Didn't he disregard evidence in the record, in the form of Mr. Raymond's testimony, that Area J would have been less driving for him? No, he did not. He considered it. But even if you credit Mr. Raymond's testimony that it would have been less driving He said there wasn't any evidence. And that was clearly untrue, right? Because there was evidence in the Mr. Raymond's testimony. I disagree, Your Honor. The question is evidence of what? Was there evidence in the record that switching to Area J would have accommodated the 30-minute limitation? And the answer to that question has to be no. It's no. There was no evidence, no evidence in the record, that switching to Area J would have accommodated that very specific limitation. I don't think that that's a very specific question. It's a question on summary judgment. So I'm going to move on. I have a couple of other questions on other topics. And my colleagues might as well. Let's say, hypothetically, that we conclude that the failure to accommodate claims should go back for trial, and the jury in that trial concludes that NBEF did actually fail to accommodate him. What do we do about the verdict on the discrimination claim? Do we have a procedural mess here, or what do we do? In that hypothetical scenario, I think the jury verdict I don't think would be disturbed by that. I would note that in. Because of why? Why wouldn't it be disturbed? Because as I believe came up in the prior argument, the jury could have ruled in NBEF's favor or found in NBEF's favor, based on finding that Mr. Raymond had not met any one of the elements of his claim at trial. So they could have found that he was not disabled. And we have inconsistent verdicts all the time. Right. So, like, we could, in theory, lose the discrimination claim, but win on the accommodation claim. That's a theoretical possibility. That is a theoretical possibility. Okay. I want to know what we do about the 100% healed policy. Would that be a per se violation? If there was such a policy, perhaps. But the evidence at trial was that there was no, never. What do we do about the without restrictions from Mr. Kroll? So, Mr. Raymond has focused on these two phrases at length in his briefing and, again, at trial, and just completely ignores the vast evidence that was at trial, the testimony, explaining why these phrases were used and what they meant. And at trial, the witnesses explained, one after the other, that NBEF never had a 100% healed policy. NBEF had two different departments responsible for considering accommodation requests, its Staff Claims Department and its HR Department. They had many policies and generous benefits for employees with disabilities. All of that goes ignored by Mr. Raymond. And with respect to the 100%, with respect to the no restrictions language, there were multiple witnesses at the trial who explained that the no restrictions language was not a blanket, you know, we don't accept employees with restrictions. The no restrictions language was, we have here an employee who is unable to drive for long periods of time, and it is that specific restriction that prohibits him from performing the essential functions of his role. Not some blanket policy of we don't accept employees with restrictions. There was no evidence of that in the record whatsoever. Well, so that I think is a helpfully argued piece for the discrimination claim. But what do we do about the accommodation claim? Like, is that evidence of a failure to engage in an interactive process? I don't believe it is, Your Honor. And again, NBEF accommodated Mr. Raymond multiple times. Mr. Raymond first sought accommodations in 2015 when he had a pulmonary embolism and went on short-term disability leave. He came back, and he had some restrictions when he came back, including that his doctor advised that he should sit more. And NBEF accommodated that request. That is not in dispute here. There was a second time, the next time he asked for accommodations was after the restructuring and he was transferred to Area I. And he said at that point, or his doctor said at that point, that he could not engage in prolonged driving. Okay, he got four. So those are two. Those are two. It was only after Mr. Raymond, in six months, went by. And, by the way, he did have some medical complications while he was servicing Area I. And just to be clear, there is not a shred of evidence with a causal connection between his assignment to Area I and his medical complications. Nothing. Zero. One didn't cause the other. That has been argued, but there's no evidence in any record on that point. I'm just wondering what you're saying. That's what I'm saying. So my question, again, is, is the statement that you cannot come back without restriction at least create an issue of fact that they were not going to consider any accommodation for him? No. Why not? I think it's important to look at when those statements were made in the course of time. It was in the summer of 2018 when Mr. Raymond experienced the further medical complications that his doctor submitted a note that, for the very first time, said that he could not drive for more than 30 minutes at a time. And he went on short-term disability leave after that. When he returned from leave, he submitted another doctor's note that said the very same thing. And, again, it was that very specific accommodation that NBF could not work with. This was a fieldwork job. This is a prolonged driving job. That is what these outreach coordinators do. And so that was what NBF could not accommodate. I'm sorry. Is that a question for the jury, too? What is an essential job function? What is a bona fide job requirement? Like, I don't believe it is. I don't think that that's. Okay. If there is case law that says that it is, do you still prevail? Well, I think we do still prevail because, first of all, in summary judgment, I don't think there was evidence to the contrary. I mean, the employer had evidence both in the form of a job description and testimony describing the essential function of the job. Because the essential function now is being able to drive 30 minutes without interruption, not just prolonged driving or long driving, right? Because what the job description only says is prolonged driving. Correct. So you have created a new description of what an essential function is, which is being able to drive uninterrupted for 30 minutes. And if I represent to you that there is case law that says that a jury gets to decide whether or not something is actually an essential function as opposed to an employer saying that it is, how do you still avoid summary judgment? Or how do you still avoid going for trial on this issue? It's – well, first, I don't think NBF took the position that the failure to – well, let me back up. The evidence was that the 30 – that being able to drive, engage in prolonged driving, was an essential function of the job. I understand they might dispute that. Okay. So if it's disputed, doesn't that answer the question that we at least need to go back to a jury on that? No, because the question before the court was whether NBF accommodated Mr. Raymond's disability or whether there was a reasonable accommodation available that would have been appropriate in this circumstance. This is a reasonable accommodation case. And so what Judge Daniels held and what he found, which we believe is correct, is that there was – Mr. Raymond at no point, even to this day, identified a reasonable accommodation that NBF refused to provide. And so that's really the crux of the issue. Okay. I think we understand. Yeah. Okay. Okay. Thank you so much. Would you like – okay. Thank you. Would you like me to address the second – I'm sorry. What is the issue? The trial. It's all in your papers. Okay. It's all in our papers. Yeah. Your client got their money's worth. You're 11 minutes over. Thank you, Your Honor. I'll be very quick, hopefully, Your Honor. That's two minutes. You're entitled to them. As I heard a congressman say to a lawyer once, don't be quick, be brief, but don't be quick. That is good instruction. I will do that. I want to first focus on clearing up this distinction between job restructuring and reassignment to a vacant position. And Mr. Raymond was absolutely making a request for job restructuring, not reassignment to a vacant position. And there is a basis for that in the law, and there are disputes about that in the facts. And the basis for that in the law is the ADA statute defines reasonable accommodation. It lists out what might be reasonable accommodations. And the concept of job restructuring and reassignment to a vacant position are distinct ideas. And we know that Mr. Raymond's request was actually a request for job restructuring, based on the legislative history of that statute, where in the House of Representatives session, they said that job restructuring includes things like re-delegating assignments, exchanging assignments with another employee, which is exactly what Mr. Raymond requested here. I also just want to make the point that the evidence in the record is disputed on whether this was a position or whether this was an assignment that could be shuffled around. That's a mixed question of law, in fact. It's not a pure question of law. And that evidence includes the job posting itself, which does not outline that area assignments are strict positions. And it's also evidenced by Mr. Saucy's testimony that he made reassignments. And the reasons he made reassignments were not always for business reasons. Mr. Raymond served at least three different areas during his time as an outreach coordinator. And the final point I'll make, Your Honors, is that really what Appelli's arguments are on this point are arguments of undue burden, which is their burden to make. They did not raise it on summary judgment to the extent they believe that this accommodation would not have been possible. Those are their arguments to make. Mr. Raymond's burden was minimal. It was a minimal burden of production to show that it was plausible and that the cost didn't grossly outweigh the benefit. I believe he met that burden. I'm happy to answer any other questions, but I otherwise lose it then. Thank you. This was very helpfully argued.